**Richard F. BUZINSKI, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–887.

United States Court of Veterans Appeals.

March 16, 1994.

**362**

James A. Herb, Boca Raton, FL, was on the brief, for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Adam K. Llewellyn, Washington, DC, were on the brief, for appellee.

Before MANKIN, HOLDAWAY, and STEINBERG, Judges.

MANKIN, Judge:

Richard F. Buzinski (appellant) appeals a March 18, 1992, decision of the Board of Veterans' Appeals (BVA or Board) finding that notice provided to the appellant during foreclosure on his VA guaranteed mortgage did not violate the Due Process Clause of the United States Constitution, U.S. CONST. amend. V, and that waiver of recovery of $13,750.00 of his indebtedness was not warranted. The appellant does not appeal the BVA decision with regard to waiver of recovery of indebtedness.

The appellant sold the property encumbered by the VA guaranteed mortgage without obtaining a release of liability. The new owner subsequently defaulted, and the appellant was held liable for indemnification of the VA for the loan guaranty debt resulting from the VA's guaranty of the mortgage debt. Notice of the default and foreclosure were directed to the appellant's forwarding address and to the address of the property listed as security on the mortgage, but because the appellant was no longer residing at the property, some notices reached him directly while others had to be forwarded. The appellant claims the BVA erred in determining that the notice afforded him was constitutionally sufficient because he claims he was unaware of the foreclosure proceedings. However, the Board found that the appellant received actual notice of the default and foreclosure, and that the notice provided was constitutionally adequate. The Court affirms the Board's decision.

## I. Factual Background

In 1984 the appellant purchased a home in Davie, Florida, for which he obtained a VA guaranteed mortgage. In executing a separate VA Application for Home Loan Guaranty, the appellant acknowledged his responsibility to indemnify the VA in the event of foreclosure on the mortgage. The appellant was informed that his obligation of indemnity to the VA persisted even though the property might be sold to another party who assumed the mortgage and subsequently de-

faulted on the loan. The appellant was additionally informed that he could avoid the indemnification liability by obtaining a release from the VA.

The appellant transferred the property, encumbered by the VA guaranteed mortgage, by quitclaim deed in November 1985, allowing the purchaser to assume the mortgage. Prior to allowing the purchaser to assume the mortgage, the appellant neither contacted the VA nor secured a release of liability from the VA. Following the assumption, the purchaser made no payments on the mortgage, and it went into default in November 1985, the same month as the conveyance.

On January 9, 1986, the mortgagee sent a Notice of Default to the VA as required by 38 C.F.R. § 36.4316 (1993). The notice notes that the mortgagee attempted to contact the mortgagor, and further evidences some confusion about the proper party to whom correspondence should be sent. The form notes the transfer of the subject property, and shows that the appellant's name and forwarding address were crossed out in the box indicated for owner's information. The name and address of the purchaser of the property were substituted for that of the appellant. The appellant's name, without any address, was indicated in the box designated for the name and address of the original veteran who obtained the loan.

On January 22, 1986, the mortgagee sent notice to the appellant at his forwarding address that the mortgage on the property had been delinquent for ninety days and was in default. Also enclosed with the letter was a form which both the appellant and the Secretary have failed to include in the record on review. On January 31, 1986, the VA also sent notice to the appellant that the mortgage was in default. However, this notice was addressed to the appellant at the address of the subject property rather than his forwarding address. Nonetheless, in testimony before the Regional Office (RO) during a hearing in August 1988, he acknowledged receiving this actual notice in early 1986.

The January 31, 1986, VA notice stated that foreclosure was probable on the subject property, and urged that prompt action be taken to protect the interest of both the appellant and the VA. It also recommended that the appellant contact the mortgagee and the current owner of the property to attempt to avert foreclosure. At this time, the appellant did not contact the mortgagee, the VA, or the purchaser regarding the status of the mortgage. Rather, the record does not demonstrate that the appellant elected to take action in response to the notices of the mortgagee and the VA.

On February 20, 1986, the mortgagee filed with the VA a Notice of Intent to Foreclose as required by 38 C.F.R. § 36.4317 (1993). The notice is complete in all respects except that the box intended for the name and address of the original veteran borrower has been left blank. The notice does indicate, however, that the mortgagor, apparently still referring to the appellant, had not yet contacted the mortgagee. Subsequently, the mortgagee filed a complaint, dated May 1, 1986, for foreclosure on the subject property in the Florida Circuit Court for Howard County [hereinafter Florida state court]. The VA responded to the mortgagee on July 25, 1986, that it had received a copy of the complaint, and directed the mortgagee to timely file a foreclosure appraisal in accordance with 38 C.F.R. §§ 36.4319, 36.4325 (1993). Final judgement of foreclosure was entered by the Florida state court on August 20, 1986, setting October 20, 1986, as the date of the property's sale. Notice that the sale was to be conducted was sent to the VA on August 22, 1986, and the foreclosure appraisal report was filed on September 2, 1986. The sale of the property was subsequently rescheduled to take place on December 30, 1986.

The appellant received further notice regarding the status of the mortgage on September 26, 1986. This notice from the VA informed the appellant that foreclosure was likely to occur, and that the appellant should contact the mortgagee and the purchaser to attempt to protect his remaining interest. The appellant and the VA made telephone contact on October 6, 1986, at which time the VA explained that the property had been foreclosed upon and that the appellant would be liable to indemnify the VA. The VA also

recommended that the appellant take whatever action was necessary to protect his remaining interests as well as those of the VA. In response to the VA's recommendations, the appellant telephoned the purchaser and inquired into the status of the mortgage. Notwithstanding the notice received by the appellant from the VA and the mortgagee in January and September 1986, the appellant relied on the representations made by the purchaser that the foreclosure notices were the result of administrative error. The purchaser further represented that he would rectify the error.

The property was sold on December 30, 1986, for the sum of one hundred dollars. During the interim between his contact with the purchaser and the sale of the property, the appellant apparently did not independently inquire into the purchaser's representations or the status of the mortgage and its foreclosure. Following the sale, the VA compensated the mortgagee for the shortfall between the sale price of the property and the amount owed on the mortgage obligation. Thereafter, the VA sought recovery of the loan guaranty indebtedness from the appellant, and he requested a waiver. A partial waiver was granted and increased to approximately one-half of the asserted debt by the Board. This appeal followed.

## II. Analysis

### A. Introduction

The appellant essentially makes three contentions. First, the appellant argues that any foreclosure notification he did receive was insufficient to satisfy the requirements of the Due Process Clause of the United States Constitution. Second, the appellant asserts that the VA denied him due process because it failed to follow its own regulations regarding notice for foreclosure on VA guaranteed mortgages. Finally, the appellant maintains that he was denied due process because the VA failed to follow 38 U.S.C. § 3732(a)(4), which requires the Secretary to assist a veteran avoid foreclosure. The appellant's constitutional challenges question the validity of the loan guaranty indebtedness based upon both the subrogation and indemnification procedures. Because we find that the loan guaranty indebtedness may be

valid based upon indemnification alone, we do not reach the subrogation issue.

■ We hold that the loan guaranty indebtedness is valid. 38 U.S.C. § 3732; 38 C.F.R. § 36.4323 (1993). A veteran is liable to the VA through either indemnification or subrogation for any compensation paid by the VA to the mortgagee due to default and foreclosure on the veteran's VA guaranteed mortgage. 38 U.S.C. § 3732; 38 C.F.R. § 36.4323; see also Stone v. Derwinski, 2 Vet.App. 56 (1992). A veteran remains liable for the loan guarantee indebtedness even though he may have transferred the property to a new owner who has assumed liability for and subsequently defaulted on payment of the mortgage. 38 U.S.C. § 3732; 38 C.F.R. § 36.4323; see also Travelstead v. Derwinski, 1 Vet.App. 344 (1991), aff'd, 978 F.2d 1244 (Fed.Cir.1992); Smith (Barbara) v. Derwinski, 1 Vet.App. 267 (1991); Branham v. Derwinski, 1 Vet.App. 93 (1990). In the instance of a mortgage assumption, the veteran remains liable to the VA unless he secures a release of liability. 38 U.S.C. § 3732; 38 C.F.R. § 36.4323.

In this case, the appellant conveyed the subject property to the purchaser in return for a quitclaim deed and promise that the purchaser would pay the mortgage. The appellant did not obtain a release of liability from the VA, although he was on notice that this was the only means by which he could avoid liability if the purchaser should default. The purchaser did, in fact, default, and under existing statutory, regulatory, and case law, the appellant is liable for the loan guaranty indebtedness. Travelstead, 1 Vet.App. 344.

### B. Constitutional Claim

■ Although the loan guaranty indebtedness is in all other respects valid, the appellant first suggests that it should be invalidated because any notice he received did not satisfy the requirements of the Due Process Clause. U.S. CONST. amend. V. This Court is empowered to make determinations regarding the constitutionality of foreclosure proceedings by virtue of its organic legislation, and Court precedent on the matter. 38 U.S.C. § 7261(a)(1), (a)(3)(B); see

*also Smith,* 1 Vet.App. at 271–72. VA resolution of questions of constitutional interpretation are questions of law, to which no deference is accorded and accordingly this Court's review is de novo. *Id.; see also Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991) (questions of law receive de novo review).

 A veteran has a separate obligation established by federal law to indemnify the VA for a loan guaranty indebtedness. *Stone,* 2 Vet.App. at 57; see also 38 U.S.C. § 3732; 38 C.F.R. § 36.4323(e). This obligation exists regardless of any conflicting state laws governing foreclosure. *United States v. Shimer,* 367 U.S. 374, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961). The obligation remains although the veteran may have transferred the property encumbered by the VA-guaranteed mortgage, and allowed the transferee to assume payment of the mortgage. *Travelstead,* 1 Vet.App. 344; *Smith,* 1 Vet.App. 267; *Branham,* 1 Vet.App. 93. This obligation, however, is not unlimited, and is not free of constitutional restraints. Thus, the VA's right to indemnity may be defeated if a veteran does not receive adequate notice that the transferee has defaulted upon the mortgage and that foreclosure may result. *United States v. Whitney,* 602 F.Supp. 722 (W.D.N.Y.1985).

 The appellant has claimed that the constitutional deficiency in this instance was his lack of knowledge that the foreclosure proceedings were taking place. Under the appellant's theory, a lack of knowledge is tantamount to a lack of notice and thus a violation of due process. To the contrary, however, both the United States Supreme Court and this Court have held that the due process inquiry does not turn on whether a property owner knew that a foreclosure proceeding was taking place, but rather turns on whether the mortgagee has used his best efforts in good faith to put the owner on notice that a foreclosure is to take place. *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983); *Smith,* 1 Vet.App. at 276–280. The constitutionality of a foreclosure procedure depends not on the subjective understanding of the property owner, but on the objective propriety of the procedures used. *Id.* Therefore, an appellant's claimed lack of subjective knowledge does not as a matter of course deprive him of due process. Rather, the Court must inquire into the procedures that were employed in this case to determine whether they comport with the Due Process Clause. While such a case-by-case analysis does not necessarily provide a bright line rule, it is the only means of insuring procedural due process.

 It is elementary that actual notice of a foreclosure proceeding is preferable to constructive notice. *Id.* In the present case, the Board found, as a matter of fact, that the appellant received actual notice of the default and impending foreclosure. The appellant contends, however, that he did not receive notice of the default and impending foreclosure. The Court reviews such assertions of error in fact finding under the "clearly erroneous" standard, *Mense v. Derwinski,* 1 Vet.App. 354, 356 (1991), set out by the Court in *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990). In *Gilbert* we stated that the role of this Court is not to make findings of fact, but to ascertain whether the findings made by the Board evidence clear error. *Gilbert,* 1 Vet.App. at 53. The Board's findings constitute clear error only where they are not supported by a plausible basis in the record. *Id.* at 53. In this instance, it is abundantly clear that the Board's finding that the appellant received actual notice of the impending foreclosure action is supported by a plausible basis in the record.

On January 22, 1986, the mortgagee sent notice to the appellant at his forwarding address that the VA guaranteed mortgage had been delinquent for ninety days and was in default. The notice did not state that foreclosure actions had been instituted, but did request that the appellant complete a form. Whether the form enclosed with the mortgagee's letter might have provided notice of the sale is unknown since neither the Secretary nor the appellant has designated it for the record.

The appellant argues that the letter's failure to state that foreclosure proceedings had been instituted cause the letter to be insuffi-

cient to put him on notice of those proceedings. In a similar instance, the Supreme Court held that knowledge of a tax delinquency is not equivalent to knowledge that a tax sale is pending. *Mennonite*, 462 U.S. at 800, 103 S.Ct. at 2712. However, in the factual context of this case, we hold that the letter apprising the appellant of the mortgage deficiency gave him sufficient notice that a foreclosure sale was pending. In *Mennonite*, the sale proceeded not according to contractual terms to which the parties had agreed, but according to state statute. *Id.* at 793–95, 103 S.Ct. at 2708–10. In contrast, the mortgage contract between the appellant and the mortgagee clearly states that breach of the mortgage, such as failure to pay the monthly amount, will render the mortgagor liable for all outstanding mortgage payments and may result in foreclosure. Accordingly, appellant's notification from the mortgagee that the mortgage was in default served to provide notice that foreclosure was imminent and would be pursued.

The Court further holds that the appellant was also put on notice by the VA. On January 31, 1986, the VA sent notice to the appellant at the address of the subject property. The notice specifically stated that the appellant's mortgage was in default, and that "[f]oreclosure appears probable on [the] . . . property." It further advised the appellant to take appropriate measures to avoid the foreclosure, such as contacting the mortgagee, the purchaser, and an attorney. Furthermore, the appellant conceded that he had received the notices sent by both the mortgagee and VA. The record is painfully clear that the appellant simply ignored the notice which was afforded him.

Next, the appellant received notice from the VA at his forwarding address on September 26, 1986. This notice again noted that the appellant's mortgage was in default and that foreclosure was likely (an anomaly). The notice further recommended that the appellant take action to avoid the foreclosure. The appellant called the VA on October 6, 1986, eight months after the original VA notice was sent and eleven days after the second. During this conversation, the VA explained the appellant's rights and duties

and obligations to the VA, and entreated the appellant to protect his interests and those of the VA. The appellant then elected to telephone the purchaser of the property to inquire why the mortgage was in default. The purchaser informed the appellant that the notices were the result of some administrative error, and that the purchaser would correct the problem. Apparently satisfied with this explanation, and notwithstanding the repeated notices and advice of the VA, as well as the notice from the mortgagee, the appellant chose to rely upon the representations of the purchaser rather than independently pursue a resolution to the problem. And thus, the appellant took no further action until the VA requested repayment of the loan guaranty indebtedness.

A veteran's failure to zealously guard his rights when put on notice of a foreclosure action is an error of judgment for which the law has no remedy. The Court concludes that the VA was correct in its June 15, 1990, Statement of the Case when it opined that "[t]he veteran was aware of the foreclosure proceedings as he had telephone contact with the [VA], but chose to do nothing to protect his interests or those of the [VA]."

### C. Failure to Follow Regulations

■ The constitutional inquiry we have undertaken is quite different from that which must be conducted to determine whether the mortgagee has complied with VA regulations governing notice requirements. In the constitutional inquiry, a finding that a veteran has not received sufficient notice will violate the Due Process Clause, and thus void the veteran's duty to indemnify the VA. Such a finding would also obviate the need to determine whether the VA and mortgagee have complied with applicable notice regulations. The Constitution exists as an instrument of the highest dignity, and thus supersedes any subordinate instruments, such as regulations. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). Thus, compliance with the regulations but not constitutional due process would create no valid debt. However, since the Court has found no due process violation, we now turn to the appellant's remaining claims.

■ The appellant asserts that the VA denied him what he terms "due process" because it failed in several substantive respects to follow its own regulations regarding notice for foreclosure on VA guaranteed mortgages. First, the appellant contends that the VA violated his "due process" rights by failing to give him notice of the foreclosure action in accordance with VA regulations. An analysis of the applicable regulations, however, yields the conclusion that the VA owed the appellant no regulatory duty to notify him that the mortgage was in default or was being foreclosed upon.

As an initial matter, we agree that the VA is obligated to follow the regulations it promulgates. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 269, 74 S.Ct. 499, 504, 98 L.Ed. 681 (1954); *Vitarelli v. Seaton*, 359 U.S. 535, 539, 79 S.Ct. 968, 972, 3 L.Ed.2d 1012 (1959). However, the regulations governing default and foreclosure on a VA guaranteed mortgage, 38 C.F.R. §§ 36.-4315–36.4325 (1993), contain no provisions requiring the VA to provide the veteran with notice of a foreclosure action and sale. Rather, the regulations require the mortgagee to provide notice of the default and foreclosure to the Secretary. 38 C.F.R. §§ 36.4315–36.-4317. The regulations also require that the mortgagee provide notice of a foreclosure to the original veteran-obligor where he is not also the current owner. 38 C.F.R. § 36.-4317(c). There simply are no regulations requiring that the VA provide notice to a veteran in the event of a foreclosure.

Second, the appellant argues that the mortgagee's failure to include his address on the Notice of Default and his name and address on the Notice of Intent to Foreclose violated 38 C.F.R. § 36.4332 (1993), and thus due process. This regulation states in pertinent part, "Any notice required ... to be given [to] the Secretary ... must plainly identify the case by setting forth the name of the original veteran-obligor." 38 C.F.R. § 36.4332. The Notice of Default contains the appellant's name and therefore could not more plainly comply with the regulation.

■ The Notice of Intent to Foreclose does not contain the name of the appellant, and therefore is in violation of the regulation.

However, this regulation requires notice to be sent to the VA, not notice to be sent to the veteran. Accordingly, it is only the VA that may complain that the notice was deficient, and the appellant lacks standing to assert an injury suffered by the government. *Daley's Dump Truck Serv., Inc. v. Kiewit Pac. Co.*, 759 F.Supp. 1498, 1503 (W.D.Wash. 1991) (no harm to appellant for standing purposes when fraud directed against government), *aff'd sub nom. Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303 (9th Cir. 1992), *cert. denied*, — U.S. ——, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993); *see also Deeper Life Christian Fellowship, Inc. v. Sobol*, 948 F.2d 79, 81 (2d Cir.1991) (standing doctrine requires that party have suffered injury beyond a citizen's general concern that government may not be following law). Furthermore, the Secretary's discretion under the regulations is considerably broad in determining the proper response to procedural violations. 38 C.F.R. § 36.4317(c) (failure of mortgagee to provide notice of intent to foreclose to veteran *may* result in total loss of guaranty). In this instance, the Secretary determined that the procedural violation was de minimis at most, and hardly worth any comment. Since this issue is not properly before the Court, however, we do not pass on the propriety of the Secretary's determination.

■ Third, the appellant asserts that the mortgagee's failure to comply with 38 C.F.R. 36.4317(c) violated his due process rights. This regulation requires that "notice ... shall also be provided to the original veteran-borrower and any other liable obligors by certified mail within 30 days after such notice is provided to the Secretary in all cases in which the current owner is not the original veteran-borrower." 38 C.F.R. § 36.4317(c). As required by regulation, 38 C.F.R. § 36.-4317, the mortgagee on February 20, 1986, filed a Notice of Intent to Foreclose with the VA. However, the mortgagee did thereby provide notice of the foreclosure via regular mail on January 22, 1986, nearly one month prior to the filing of the Notice of Foreclosure. While the mortgagee did provide the appellant with notice of the default, this notice was not sent via certified mail or

provided within thirty days after the notice was provided to the Secretary. As the regulations make clear, notice of the foreclosure must be sent to the veteran within thirty days *after* the filing of notice with the Secretary. 38 C.F.R. § 36.4317(c).

As an initial matter, we find that the regulation was not in force at the time of the foreclosure action. The regulation, 38 C.F.R. § 36.4317(c), did not enter into force until May 19, 1993, and thus could not have been applied during the foreclosure. The Secretary asserts that this Court's holding in *Karnas v. Derwinski*, 1 Vet.App. 308 (1991) (where law applying to appellant's claim has changed prior to the final resolution of the claim, law most favorable to appellant will be applied) is inapposite in this matter. The Secretary interprets our holding in *Karnas* to require that the regulatory change occur prior to the final resolution of the appellant's claim. The Secretary further contends that in this case *Karnas* is inapposite because the final resolution of the appellant's claim was the final judgment entered by the Florida state court, not the present action.

Assuming, without deciding, that *Karnas* is applicable to the present case, we hold that there was substantial compliance with 38 C.F.R. § 36.4317(c). The regulation clearly states that failure of the mortgagee "to make a *good faith* effort to comply with the provisions of this subparagraph *may result* in a partial or total loss of guaranty . . ., but such failure shall not constitute a defense to any legal action to terminate the loan." 38 C.F.R. § 36.4317(c) (emphasis added). The section makes clear that it may not be used as a defense against the mortgagee in a foreclosure proceeding; it is simply a remedy that the Secretary may employ to provide an incentive for mortgagees to comply with VA regulations. The appellant did receive notice of the default and possible foreclosure from the mortgagee, albeit earlier than prescribed by the regulations. Given the apparent confusion regarding the appellant's address and status, and given the appellant's complete failure to respond to the notices issued by the mortgagee and VA in January 1986, and further given the appellant's unjustified reliance upon the representations of the pur-chaser, we cannot find that the appellant was denied effective notice. We are further fortified in our holding by our finding that the intent of the regulations is to provide a notice procedure in addition to the requirements of the Constitution, and that substantial compliance with that intent was achieved. Thus, we can find no violation of any procedural due process rights.

■ Fourth, the appellant claims a "due process" violation in the mortgagee's failure to comply strictly with the requirements of 38 C.F.R. § 36.4319(b). This regulation requires the mortgagee to deliver notice of sale to the Secretary "at least 30 days prior to the scheduled liquidation sale, or within 5 days after the date of first publication of the notice, whichever is later." 38 C.F.R. § 36.-4319(b). In the present case, the Secretary received notice of the originally scheduled sale well in advance of the thirty day notice allowed by the regulations. The sale was subsequently rescheduled, but it is not clear from the record whether the Secretary received adequate notice of that sale. Nonetheless, the Secretary did not elect to pursue sanctions against the mortgagee. Since the intent of the regulation is to provide notice to the VA so that it may protect its interests, we find that the appellant does not have standing to challenge an injury which was not suffered by him. *Daley's Dump Truck Serv., Inc.*, 759 F.Supp. at 1503; *see also Deeper Life Christian Fellowship, Inc.*, 948 F.2d at 81. The failure of the mortgagee to comply perfectly with the provision is an injury to the VA which only the Secretary may pursue. His election not to do so and apparent finding that substantial performance on the regulation was sufficient is a decision the appellant may not challenge.

Finally, the appellant states that "the case of *Rank v. Cleland*, 460 F.Supp. 920 (C.D.Cal.1978) (*Rank I* ), stands for the proposition that under servicing requirements of handbooks, circulars, internal V.A. manuals, and 38 U.S.C. § 1804(d) [now 38 U.S.C. § 3704(d) ], both the V.A. and the private lender *must take all reasonable measures to avoid foreclosure* of a V.A.-guaranteed home loan." The appellant fails to note that *Rank I* was reversed on appeal in *Rank v. Nimmo*,

677 F.2d 692, 698 (9th Cir.1982) (*Rank II*). In *Rank II*, the Ninth Circuit held that in order for VA handbooks, circulars, and manuals to have the "force and effect of law" they must "prescribe substantive rules—not interpretive rules." The *Rank II* court found that the VA Lender's Handbook and VA Circular 26–75–8 did not prescribe substantive rules but were "general statements of agency policy and procedure" intended as a "general guide to VA employees," and thus there was no enforceable duty on the part of the VA to "take all reasonable measures to avoid foreclosure." *Rank II*, 677 F.2d at 698.

The distinction set out in *Rank II* between "substantive" and "interpretive" rules is similar to this Court's analysis in *Fugere v. Derwinski*, 1 Vet.App. 103, 107–08 (1990), noting the distinction between "substantive" and "interpretive" rules for enforceability purposes, and holding that a VA manual provision regulating the award of benefits for defective hearing "affected a substantive right and [that] its placement in a procedural manual [could not] disguise its true nature as a substantive rule." *See also Hayes v. Brown*, 4 Vet.App. 353, 360 (1993); *Suttmann v. Brown*, 5 Vet.App. 127, 138 (1993). Here, apart from his general reference to *Rank I*, which, as noted, was reversed on appeal, the appellant has not pointed to any VA handbooks, circulars, or manual provisions which state that the VA must "take all reasonable measures to avoid foreclosure." Nor has the Court found any. The VA issuances discussed in *Rank II*, 677 F.2d at 694–95, imposed no specific mandatory duties on VA employees as distinguished from providing general guidance. Thus, the appellant's statement in that regard is unsupported and unpersuasive.

### D. *Failure of VA to Provide Assistance*

■ Although the appellant has not specifically made this contention, we will also assume that the appellant in arguing that the VA failed to provide him with assistance in avoiding foreclosure is also arguing that the VA violated some mandatory duty to assist under 38 U.S.C. § 3732(a)(4). The section directs the Secretary to provide a "veteran with information and, to the extent feasible, counseling regarding ... alternatives to foreclosure ... and ... what the [VA] and the veteran's liabilities would be with respect to the loan in the event of foreclosure; and ... advise the veteran regarding the availability of ... counseling." 38 U.S.C. § 3732(a)(4). The Secretary is relieved of furnishing this assistance where he determines that the mortgagee "has a demonstrated record of consistently providing timely and accurate information to veterans." *Id.*

The section was made a part of the statute by Public Law No. 100–198 § 4(a), 101 Stat. 1316 (Dec. 21, 1987), which had an effective date of March 1, 1988. The final Florida state court decision in this case, foreclosing on the property and directing its sale, was rendered on August 20, 1986, well before the effective date of the section. Nonetheless, assuming, but not deciding, that *Karnas*, 1 Vet.App. 308, directs the retroactive application of the provision in the instant matter, we find that as a matter of fact there was substantial compliance with the provision by the VA.

The VA repeatedly contacted the appellant in an effort to assist him in avoiding foreclosure. Yet, the appellant elected to rely on the unjustified representations of the purchaser that the purchaser would resolve the situation. Furthermore, the appellant elected not to respond to any of the notices directed to him by the VA. The VA has breached no duty where it has in good faith attempted to assist the appellant, but where the appellant has ignored those attempts. Therefore, we find that the Secretary substantially complied with this provision, and any assistance which the appellant did not receive was due to his own inaction, rather than any omission of duty on the part of the VA.

### III. Conclusion

Upon consideration of the record, the appellant's brief, and the Secretary's brief, the decision of the Board of Veterans' Appeals is AFFIRMED.